Filed 9/21/23  Gomez v. Munroe CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| EMELINA GOMEZ,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>MASSIE MUNROE,<br><br>        Defendant and Appellant. | B317768<br><br>(Los Angeles County<br> Super. Ct. No. 21PDRO01125) |

APPEAL from an order of the Superior Court of Los Angeles County, Timothy Martella, Judge.  Affirmed.

Massie Munroe, in pro. per., for Defendant and Appellant.

John Koutsoukos for Plaintiff and Respondent.

## INTRODUCTION

This case involves a long-time dispute between neighbors, plaintiff Emelina Gomez (Gomez) and defendant Massie Munroe (Munroe). Munroe appeals from the trial court's order granting Gomez a three-year restraining order against Munroe (Code Civ. Proc., § 527.6).[1] Munroe contends the restraining order was not supported by substantial evidence. We disagree. We affirm the court's order.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

Munroe and Gomez own houses next door to each other. Gomez's mother, father, and sister live there, and Gomez visits. As a threshold matter, we note there is an underlying disagreement between the parties regarding the location of the property line dividing their adjoining land. The disagreement has existed for years, but neither party has initiated litigation regarding that matter. The property line dispute is not at issue here, but provides context regarding the parties' relationship to one another.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

[2] At oral argument, Gomez's counsel represented that Munroe was deceased. As Munroe was self-represented, we issued an order vacating submission of the matter and directing Gomez's counsel to present proof of Munroe's death within 10 days of the order. Gomez's counsel filed a declaration stating he was unable to obtain documentation of Munroe's death. We provided counsel an additional 30 days to obtain a death certificate. The 30-day deadline has now expired without any further communication from counsel. On September 12, 2023, the case was submitted.

A. *The Petition for Civil Harassment Restraining Order and the Issuance of the Temporary Restraining Order*

Gomez filed a petition for a civil harassment restraining order against Munroe pursuant to section 527.6.[3]  In the petition, Gomez alleged as follows.  Munroe has harassed the Gomez family "on and off for almost 30 years."  The Gomez family called the police "several times."

Gomez stated Munroe "broke our property-line fence twice" and "thr[ew] pots, dirt, garbage and water at us."  Munroe "[e]nter[ed] our property yelling and displaying aggression."  Munroe "use[d] profanity against [Gomez's] elderly . . . mother."  The last date on which Munroe harassed the Gomez family was two days before the date of the petition.  Gomez and her family members have been "emotionally, and mentally harmed" by Munroe.  The Gomez family does not "know what [Munroe] is capable to do."  Munroe "constantly comes into our property yelling profanity."

The petition was the third civil harassment restraining order brought by the Gomez family against Munroe.  The court granted the two prior restraining orders which have since expired.

Munroe did not file a response to the petition.

---

[3]     In designating the record on appeal, Munroe did not ask the clerk to include in the clerk's transcript Gomez's petition for a temporary restraining order (petition) or the issued temporary restraining order (TRO).  Though not at issue here, Munroe filed a writ with this court, which included the petition and TRO as exhibits.  We take judicial notice of the petition and the TRO. (Evid. Code, § 452, subd. (d) ["[j]udicial notice may be taken of . . . [r]ecords of . . . any court of this state"]; Evid. Code, § 459 ["The reviewing court may take judicial notice of any matter specified in [Evidence Code] [s]ection 452"].)

3

The court granted the TRO, which was to remain in place until the end of the hearing on the petition.  The court noted, "[t]he Order is based on unlawful violence, a credible threat of violence, or stalking."

B. *The Evidentiary Hearing on the Petition*

At the hearing, Gomez and Munroe each appeared and represented themselves.  The trial court conducted a direct examination of Gomez and Munroe.

Gomez testified first as summarized below.

For years, Munroe had maintained the house next door to the Gomez Family as a rental property.  Munroe moved back into her house after the court granted the TRO the month before the hearing.

Gomez testified about an incident two days before filing the petition.  She stated Munroe "threw the potted plant, which broke the panels of the gate door [and] almost hit [her] mother."  In Munroe's "act of violence, she started screaming to [Gomez's] mother, 'you're a whore' . . . she basically lost control."  Gomez called the police when she was "on [her] way" to her house.  The police told Gomez to "stay away" because it was unclear whether Munroe "was armed or not."  Gomez's parents were "frantic."

Gomez further testified Munroe broke the property line fence "for a second time," and Munroe was in the front yard "having a major, major meltdown and screaming."  Munroe "three times, continued to . . . have fits, bouts of anger, and throw the [fence] panels" that are between the properties.  She "threw rocks" at the Gomez family's gardener and "continue[d] to berate our roofers."

Gomez stated the reason for requesting a restraining order was based on Munroe's "act of violence, continued berating of anybody that comes to our

4

house, ignoring restraining orders, moving in after the restraining order is in place, still coming on to my property." Gomez's mother was "having a nervous breakdown because [Munroe] continue[d] to harass us with vulgarity, with anger" and Gomez's "elderly parents shake." Gomez believed Munroe was "dangerous and capable of anything."

Next, the court called Munroe to testify. Munroe stated that "none" of what Gomez said was true. The court then asked Munroe if she threw a flower pot. Munroe initially evaded the question but eventually admitted throwing a flower pot. She testified she "never insulted" the Gomez family, and she was not "bothering them." She testified, "I have done nothing to [Gomez's] mother. We used to have a great relationship. . . . I still have respect for her." She also stated, "I have never insulted [Gomez's] father, [he] has insulted me." [4]

C. *The Trial Court's Ruling*

Following the parties' oral testimony, the trial court granted a three-year restraining order to protect the Gomez family from Munroe. The court found Gomez credible and Munroe to be "not very credible and not very rational." The court believed Munroe threw a flower pot "through the fence or at the fence" and is hoping to "stop that kind of behavior." The court explained there seems to be a property line dispute causing Munroe to take "self-help" and is causing her to "act[] out in a weird way."

Munroe timely appealed.

---

[4]    Munroe spent much of the hearing testifying regarding the property line issue instead of responding to the specific allegations in the petition. The court reiterated it was not concerned with the property line issue, but with Munroe's behavior and "whether . . . to restrain" Munroe from the Gomez family.

# DISCUSSION

A. *Governing Principles*

Section 527.6, subdivision (a)(1) provides, "[a] person who has suffered harassment . . . may seek a temporary restraining order and an order after hearing prohibiting harassment."

The statute defines "harassment" as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose.  The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).)  A "credible threat of violence" is defined as "a knowing and willful statement or course of conduct that would place a reasonable person in fear for the person's safety or the safety of the person's immediate family, and that serves no legitimate purpose."  (§ 527.6, subd. (b)(2).) "Course of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." (§ 527.6, subd. (b)(1).)

Once a temporary restraining order is issued, the court must hold an evidentiary hearing.  (§ 527.6, subds. (g), (i).)  At the hearing, "the judge shall receive any testimony that is relevant, and may make an independent inquiry.  If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (§ 527.6, subd. (i).)

6

B. *Standard of Review*

The standard of review of a court's decision to grant a civil harassment restraining order is "'whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record. [Citation.]'" (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 497.)

The reviewing court ""'must accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence. [Citation.]'"" (*Santa Clara County Correctional Peace Officers' Assn., Inc. v. County of Santa Clara* (2014) 224 Cal.App.4th 1016, 1027; *Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12 [appellate court does not "determine credibility or reweigh the evidence"].)

A reviewing court must determine whether there is substantial evidence in the record "in support of a finding . . . that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. . . . [I]n making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996.)

C. *Analysis*

Munroe contends on appeal the court erred in granting the restraining order "as there [was] not substantial evidence to support the order." We disagree and conclude the trial court's order was supported by substantial evidence.

The court found Gomez credible and Munroe to be "not very credible and not very rational." The court specifically found Munroe threw a flower pot "through the fence or at the fence."

Gomez testified at the hearing and declared in the petition that Munroe engaged in harassing behavior for "30 years" and the Gomez family called the police "several times." Gomez testified at the hearing about Munroe's harassment in the days preceding the filing of the petition and, in the weeks following the issuance of the TRO. This included throwing a flower pot through the Gomez family's fence, throwing mud, dirt, garbage, and water, breaking the fence on a second occasion, yelling profanity, displaying aggression, berating visitors to the Gomez family's home, throwing rocks at the Gomez family's gardener and berating the gardener. Gomez alleged Munroe had "emotionally" and "mentally" harmed the Gomez family. Gomez also testified her mother was having a "nervous breakdown," and that her mother was "frantic," and her "elderly parents shake" as a result of Munroe's behavior.

Munroe asserts the "only evidence the Court reviewed was testimony from both parties at the hearing" and notes the court did not "look at any documents." The only requirement section 527.6 imposes on the evidentiary hearing is for the judge to "receive any testimony that is relevant." (§ 527.6, subd. (i).) The court "receive[d] testimony" from both Gomez and Munroe. (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 703 ["The

8

testimony of one witness, even that of a party, may constitute substantial evidence"].) The statute also does not impose any requirement to "look at documents." Even if the statute did so require, Munroe's contention is inaccurate. The filed petition contained Gomez's sworn statements regarding Munroe's harassment.

Munroe also contends there is no substantial evidence to support the findings because there were no direct witnesses to the alleged harassment, and therefore Gomez's testimony was inadmissible hearsay. This is not so. As discussed above, Gomez provided in the petition, and in her oral testimony at the hearing, that she witnessed Munroe's conduct on various occasions. We also note section 527.6, subdivision (i) "has been interpreted to mean hearsay evidence . . . is admissible during hearings conducted pursuant to section 527.6. [Citations.]" (*Yost v. Forestiere* (2020) 51 Cal.App.5th 509, 521.) Munroe also waived the right to challenge the admission of evidence by failing to make any objection during the hearing. (See Evid. Code, § 353, subd. (a); *SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 563 [party forfeited evidentiary "challenge by failing to make an objection below that satisfies the requirements of Evidence Code section 353"].)

We conclude there is substantial evidence to support the trial court's findings and that the issuance of the restraining order was proper.

## DISPOSITION

The order is affirmed.  The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.

WE CONCUR:


CURREY, P. J.


COLLINS, J.